Matter of Wellner v Jablonka (2018 NY Slip Op 02701)





Matter of Wellner v Jablonka


2018 NY Slip Op 02701


Decided on April 19, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: April 19, 2018

525385

[*1]In the Matter of VAIRA WELLNER, Petitioner,
v
KARY JABLONKA, as Commissioner of Social Services of Columbia County, et al., Respondents.

Calendar Date: February 22, 2018

Before: Garry, P.J., McCarthy, Devine, Mulvey and Rumsey, JJ.


Guterman Shallo & Alford, PLLC, Hudson (Matthew D. Cabral of counsel), for petitioner.
Carole Ann Kinnaw, Columbia County Department of Social Services, Hudson, for Commissioner of Social Services of Columbia County, respondent.
Eric T. Schneiderman, Attorney General, Albany (Kathleen M. Treasure of counsel), for Commissioner of Health, respondent.




MEMORANDUM AND JUDGMENT
Garry
, P.J.
Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Columbia County) to review a determination of the Department of Health finding petitioner ineligible for Medicaid benefits for a certain period of time.
Petitioner suffers from a progressive neurological disorder and resides in a nursing home. Until October 2014, she had
resided with her spouse and received home health care assistance. Petitioner and her spouse have a son to whom, in 2010, the spouse transferred funds in exchange for a promissory note obliging the son to repay the loan in five annual installments. The son made only two of the payments, resulting in an unpaid balance. In February 2013, the spouse loaned him an additional and significantly greater sum in return for a 30-year mortgage on a newly-purchased residence for the son in New Jersey. Approximately three months following petitioner's entry into the nursing home, in January 2015, she submitted an application for Medicaid to the Columbia County Department of Social Services (hereinafter DSS). DSS denied the application and imposed a 45-month penalty period of ineligibility on the ground that the spouse had transferred assets for less [*2]than full market value during the 60-month period before the application.[FN1]
Acting as petitioner's attorney-in-fact, the spouse requested a fair hearing. The Department of Health (hereinafter DOH) upheld the determination following the hearing, finding petitioner ineligible for Medicaid because of the transfers, but reduced the length of the penalty period by crediting the sum of the mortgage payments that had been made by the son. Petitioner thereafter commenced this CPLR article 78 proceeding.
When an institutionalized applicant for Medicaid — or the applicant's spouse — transfers assets for less than fair market value during the 60-month "look-back period" before the date of the application, the applicant may be found to be ineligible for benefits for a period of time based upon the amount of the transfer (Social Services Law § 366 [5] [e] [3]; see Matter of Whittier Health Servs., Inc. v Pospesel, 133 AD3d 1176, 1177 [2015]). When such a transfer has occurred, a presumption arises that the transfer "was motivated, in part if not in whole, by anticipation of a future need to qualify for medical assistance," and it is the applicant's burden to establish his or her eligibility for Medicaid by rebutting the presumption (Matter of Mallery v Shah, 93 AD3d 936, 937 [2012] [internal quotation marks, ellipsis and citations omitted]; accord Matter of Krajewski v Zucker, 145 AD3d 1252, 1253 [2016]). As pertinent here, an applicant may do so by demonstrating that he or she intended to receive fair consideration for the transfers or that the transfers were made exclusively for purposes other than qualifying for Medicaid (see Social Services Law § 366 [5] [e] [4] [i], [ii]).
Here, petitioner contended both that the spouse expected the note and mortgage to be repaid in full, and, in the alternative, that the transfers were made exclusively for purposes other than qualifying for Medicaid. DOH rejected these contentions. Upon review, we find the determinations to be supported by substantial evidence. At the fair hearing, the spouse testified that he made the 2010 loan to the son for the sole purpose of assisting in the purchase of a house in Columbia County, and that it would be "unrealistic" to believe that he knew then that petitioner would someday need to qualify for Medicaid assistance. Notably, however, he also testified that petitioner had begun to display symptoms of her progressive condition "many years" before this loan was made. She had been required to use a walker due to her symptoms, and, for several years before her 2014 nursing home admission, she had required care by home health aides during workdays and by the spouse at night and on weekends. She entered the nursing home in 2014 because the spouse was no longer able to handle her care. This testimony contrasts with the primary case that petitioner relies upon in this proceeding, in which the applicant, although of advanced age, had only relatively minor health concerns at the time of the transfers (see Matter of Collins v Zucker, 144 AD3d 1441, 1443 [2016]).[FN2]
The spouse testified that, at the time of the 2013 loan and mortgage, the son, who was [*3]an attorney, had recently left his employment in a law firm to establish his own practice and was thus unable to qualify for a bank loan. The spouse stated that he drafted the mortgage himself, without legal assistance, and included a 30-year term because he believed that this time period was customary. He further asserted that he expected the son to apply for and receive a conventional mortgage loan and make repayment in full within the next five years. However, there was no documentation supporting this expectation.
Assets conveyed through a note or a mortgage during the look-back period are considered to be transfers for full market value when the underlying loan is actuarially sound based upon the lender's life expectancy, provides for equal payments throughout the life of the loan — with no deferrals or balloon payments — and includes a provision prohibiting cancellation upon the lender's death (see Social Services Law 366 [5] [e] [3] [iii]; 42 USC § 1396p [c] [1] [I]). Here, the mortgage was not actuarially sound, as its 30-year repayment term significantly exceeded the anticipated life expectancy of the spouse, who was 76 years old at the time of the transfer. After the rejection of petitioner's Medicaid application, the spouse executed an amended mortgage that reduced the repayment term to five years. However, this amended mortgage provided for the same monthly payment as had the original document, with a balloon payment at the end of the five-year term; it thus did not comply with the separate requirement for equal payments throughout the life of the loan. Moreover, neither the original nor the amended version of the mortgage included the required provision prohibiting cancellation upon the spouse's death; the 2010 note likewise included no such provision. Accordingly, substantial evidence supports DOH's determination that neither transaction was made for fair market value (see 42 USC § 1396p [c] [1] [I]; Matter of Rivera v Blass, 127 AD3d 759, 762 [2015]).
A presumption thus arose in favor of DOH, and petitioner bore the burden of establishing her eligibility for Medicaid. As for the spouse's claim that he expected to be repaid in full, his testimony at the fair hearing established that the son made no payments on the 2010 loan after 2012, but that the spouse took no action to collect the balance due until after petitioner was found to be ineligible for Medicaid. He testified that he had expected the son to repay the balance of the 2010 loan in full upon the sale of the Columbia County house that had been purchased with his assistance, but acknowledged that the son had sold that house without repaying the loan. In December 2015, a week before the fair hearing, the spouse wrote to the son demanding payment of the remaining balance of the 2010 loan if there were adequate funds available upon the sale of the New Jersey residence, or otherwise within six months — thus deferring the deadline for final payment six months beyond the end of the original term. Proof was submitted that the New Jersey residence had been listed for sale, but there was no evidence of a contract of sale. In view of the entire record, including the spouse's belated efforts to collect the balance due on the promissory note, his provision of the 2013 loan and mortgage despite the son's default on the 2010 note, and the failure of the mortgage to comply with Medicaid requirements even after the spouse amended it, we find that substantial evidence supports DOH's determination that petitioner did not establish that the spouse expected to be fully repaid for the note and the mortgage.
As for whether the transfers were made solely for purposes other than qualifying for Medicaid, DOH declined to credit the spouse's testimony that he did not contemplate that petitioner might require nursing home placement at the time of the transfers, and this Court defers to such assessments (see Matter of Mallery v Shah, 93 AD3d at 938-939). In view of the progressive nature of petitioner's condition and her poor health at the time of both transfers, substantial evidence supports DOH's conclusion that petitioner did not rebut the presumption that the transfers were made, at least in part, for the purpose of qualifying for Medicaid (see Matter of Burke v Zucker, 145 AD3d 1588, 1589-1590 [2016]; Matter of Corcoran v Shah, 118 AD3d [*4]1473, 1474-1475 [2014]; Matter of Mallery v Shah, 93 AD3d at 938-939; compare Matter of Collins v Zucker, 144 AD3d at 1441; Matter of Rivera v Blass, 127 AD3d at 762-763).
McCarthy, Devine, Mulvey and Rumsey, JJ., concur.
ADJUDGED that the determination is confirmed, without costs, and petition dismissed.



Footnotes

Footnote 1: The assessment also included a 2012 gift that the spouse made to the son. Petitioner concedes that this gift was properly treated as an uncompensated transfer subject to a penalty period of ineligibility, and raises no related challenges in this proceeding.

Footnote 2: Petitioner did not appear at the hearing due to the severity of her condition at that time; she was no longer able to walk at all, and was suffering certain cognitive difficulties.